# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * *
VICTOR FULLERTON,                    *
                                     *    No. 15-182
              Petitioner,            *    Special Master Christian J. Moran
                                     *
v.                                   *    Filed: April 24, 2019
                                     *
SECRETARY OF HEALTH                  *    Attorneys' Fees and Costs
AND HUMAN SERVICES,                  *
                                     *
              Respondent.            *
* * * * * * * * * * * * * * * * * * ** *
```

<u>Mark T. Sadaka</u>, Mark T. Sadaka, LLC, Englewood, NJ, for Petitioner;
<u>Lisa A. Watts</u>, United States Dep't of Justice, Washington, DC, for Respondent.

## <u>UNPUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS</u>[1]

On January 14, 2019, petitioner Victor Fullerton moved for final attorneys' fees and costs. He is awarded $66,262.11.

\*       \*       \*

---

[1] The undersigned intends to post this Ruling on the United States Court of Federal Claims' website. This means the ruling will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

On February 26, 2015, Victor Fullerton filed for compensation under the Nation Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 through 34. Mr. Fullerton alleged that the tetanus-diphtheria-acellular pertussis vaccine he received on March 8, 2012, which is contained in the Vaccine Injury Table, 42 C.F.R. § 100.3(a), caused him to suffer complex regional pain syndrome and reflex sympathetic dystrophy. Petitioner further alleged that he suffered the residual effects of this injury for more than six months. The parties submitted a joint stipulation that was incorporated by a decision awarding petitioners compensation in the amount of $375,000.00.  Decision, issued July 2, 2018.

On January 14, 2019, petitioner filed a motion for final attorneys' fees and costs ("Fees App."). Petitioner requests attorneys' fees of $60,121.25 and attorneys' costs of $16,233.72 for a total request of $76,354.97. Fees App. at 3. Pursuant to General Order No. 9, petitioner warrants he has personally incurred $192.80 in costs in pursuit of this litigation. Id.

On January 28, 2019, respondent filed a response to petitioner's motion. Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs." Response at 1. Respondent adds, however that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Id at 2.  Additionally, he recommends "that the special master exercise his discretion" when determining a reasonable award for attorneys' fees and costs. Id. at 3.

On February 1, 2019, petitioner filed a Reply in which he reiterated his earlier request for attorneys' fees and costs while also requesting an additional $374.90 as reimbursement for costs incurred by Mr. Kermit Huttenga, who testified on petitioner's behalf at the fact hearing held by the undersigned on April 7, 2016. Reply at 1.

\*     \*     \*

Because petitioners received compensation, they are entitled to an award of reasonable attorneys' fees and costs.  42 U.S.C. § 300aa–15(e).  Thus, the question at bar is whether the requested amount is reasonable.

The Vaccine Act permits an award of reasonable attorney's fees and costs. §15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  This is a two-step process.  Avera v. Sec'y of Health & Human Servs.  515 F.3d 1343, 1348 (Fed.

Cir. 2008).  First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  Id. at 1348.  Here, because the lodestar process yields a reasonable result, no additional adjustments are required.  Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness.  See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018)

A.     Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation.  Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower.  Id. 1349 (citing Davis Cty.  Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl.  Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)).  In this case, all the attorneys' work was done outside of the District of Columbia.

 The undersigned has reviewed the requested rates and finds them consistent with what Mr. Sadaka has previously been awarded for his work in the Vaccine Program. Therefore, no adjustment is required.

B.     Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary.  See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed.  Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable.

The undersigned has reviewed the billing records and finds the number of hours billed (214.9) to require some adjustment. The main issue is that Mr. Sadaka and his paralegal billed a number of hours prior to filing the petition on legal matters wholly unrelated to the Vaccine Program.

The Vaccine Act limits the amount of "compensation to cover petitioner's ... costs" to those "incurred in any proceeding on [a Vaccine Act] petition." § 15(e)(1). Such costs often include those that form "'an essential prerequisite condition' to obtaining an award that must 'be fulfilled in order for [the] award to be made.'" Bennett v. Sec'y of Health & Human Servs., No. 15-65V, 2017 WL 3816094, at *3 (Fed. Cl. Spec. Mstr. Aug. 7, 2017) (quoting Haber ex rel. Haber v. Sec'y of Health & Human Servs., No. 09-458V, 2011 WL 839111, at *2 (Fed. Cl. Spec. Mstr. Feb. 14, 2011)). Accordingly, special masters have consistently declined to compensate petitioners and their attorneys for work billed on matters outside of the Vaccine Program litigation which were not an essential part of obtaining an award. See Bennett, 2017 WL 3816094, at *5 (disallowing fees and costs associated with the administration of an estate); Lemon v. Sec'y of Health & Human Servs., 19 Cl. Ct. 621, 623 (1990) (same); Sucher v. Sec'y of Health & Human Servs., No. 07-58V, 2013 WL 5532179, at *15-16 (Fed. Cl. Spec. Mstr. Sept. 17, 2013) (denying fees and costs incurred in connection with a state court proceeding).

Several years before the filing of the petition, the billing records indicate that Mr. Sadaka spent a great deal of time assisting petitioner with legal matters wholly outside the scope of the instant Vaccine Program litigation. For example, Mr. Sadaka appears to have done work for petitioner concerning a disability claim before the Michigan Social Security Administration,[2] a medical malpractice claim,[3] and a claim before the United States Department of Veterans Affairs for pension

---

[2] E.g., an entry on 9/13/2012 for "Receive/review correspondence to Michigan Social Security Administration re: disability claim," an entry on 9/26/2012 for "Communicate with client re: advising client on expectations for upcoming interview with Michigan Social Security Administration;" an entry on 10/26/2012 for "Review Michigan Social Security paperwork for the purpose of completing required documentation." Fees App. Ex. A at 3-4.

[3] E.g., entries on 1/23/2013 for "Communicate with client re: identification of a liability to pursue medical malpractice case; draft notes to file" and "Communicate with Michigan attorney, Gary Krochmal re: case discussion and filing medical malpractice claim; draft notes to file;" entries in February 2014 for "Perform legal research re: medical malpractice procedures concerning federal tort claim act; draft notes to file" and "Research rules and requirements concerning notice of intent to file medical malpractice suit under federal tort claim act." Fees App. Ex. A at 8-9.

4

benefits.[4] The first billing entry for Mr. Sadaka that even references vaccine work does not occur until February 20, 2015, when Mr. Sadaka began work on drafting the petition, although it appears that work on the vaccine claim exclusively began approximately in early December 2014, when Mr. Sadaka reached out to Infusion Knowledge, Inc. for review of petitioners medical records concerning his complex regional pain syndrome. Fees App. Ex. A at 14. Indeed, with the exception of the first billing entry in which Mr. Sadaka billed for conducting an initial intake interview with petitioner, it does not appear that any of the work he billed for prior to contacting Infusion Knowledge, Inc. can be fairly attributed to the instant litigation (or at least Mr. Sadaka has not identified it as such). Because time spent assisting petitioner on other legal matters which, although they may stem from the same injury that is the cause of this litigation, are not "incurred in any proceeding on such petition" as contemplated by 42 U.S.C. § 300aa-15(e) is non-compensable, the undersigned cannot compensate petitioner for any of the time billed by Mr. Sadaka prior to December 4, 2014 other than time spent conducting the initial intake interview. This results in a reduction of **$9,249.28**.

The time billed prior to drafting the petition by Mr. Sadaka's paralegal, Ms. Keri Congiusti, also requires some adjustment, although it does not require a full reduction. While Ms. Conguisti undoubtedly spent time on work directly related to petitioner's other legal matters (e.g., an entry on 12/3/2013 for "Communicate with Department of Veteran Affairs re: status of claim and estimation of resolution; draft notes to file"), she also billed time which would be considered directly relevant to the Vaccine Program litigation, such as requesting, reviewing, and summarizing medical records, even if that work was not performed exclusively in furtherance of petitioner's Vaccine Program litigation. Ultimately, it is impossible to distinguish how much of the work done by Ms. Conguisti was in furtherance of filing the vaccine petition versus any of petitioner's other claims. Accordingly, the undersigned will reduce the time billed by Ms. Conguisti up until February 20, 2015 by 33% to achieve rough justice. This results in a reduction of **$1,411.28**.[5]

---

[4] E.g., entries on 3/17/2014 for "Communicate with client re: decision from Department of Veteran Affairs on client's claim for pension benefits;" entry on 11/4/2014 for "Draft correspondence to U.S. Department of Veterans Affairs re: request for reconsideration of denial." Fees App. Ex. A. at 10-11.

[5] The total time billed by Ms. Congiusti prior to December 4, 2014 adds up to $4,238.10. $4,238.10 * 0.333 = $1,411.28.

Concerning the time billed from February 20, 2015 until the end of the case, the undersigned has reviewed the billing records and finds that time to be reasonable and therefore it shall be fully compensated without further reduction.

C.      Costs Incurred

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).  Petitioner requests a total of $16,233.72 in costs, comprising of acquiring medical records, postage, travel expenses related to the fact hearing held by the undersigned on April 7, 2016, and the work of several experts: Ms. Kay Coulter of Infusion Knowledge, Inc. for reviewing medical records concerning the relation between petitioner's vaccination and complex regional pain syndrome ($1,619.35), KJL Consulting, Inc. for preparing a life care plan ($3,389.34), The Chalfin Group Inc. for preparing an economic damages report ($4,800.00), and Dr. Robert Friedman for reviewing medical records and submitting an expert report ($2,887.50).

The undersigned has reviewed all of the submitted documentation for the costs, including the billing records prepared by the various experts, and finds all the costs to be reasonable and supported by adequate documentation.[6] Accordingly, petitioner is entitled to the full amount of costs sought.

The undersigned will also consider the costs of Mr. Kermit Huttenga as part of the overall request for attorneys' costs. Mr. Huttenga incurred a total of $374.00 in costs related to his travel to attend the April 7, 2016 fact hearing. Petitioner has submitted adequate documentation for Mr. Huttenga's costs and shall reimburse him in full.

D.      Petitioner's Costs

Pursuant to General Order No. 9, petitioner warrants that he has personally expended $192.80 in pursuit of this litigation. This amount is for various costs

---

[6] Although the undersigned finds the overall amount billed by each expert to be reasonable in light of the work performed for this case, the undersigned is not assessing the reasonableness of any rate at which an expert billed. The undersigned reserves the right to reconsider the reasonableness of an expert's rate in future cases in light of the work performed for that case.

related to petitioner's travel to the fact hearing site. Petitioner has provided adequate documentation for his costs, and they shall be reimbursed in full.

E.   Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, I award a total of **$66,069.31** (representing $49,460.69 in attorneys' fees and $16,608.62 in attorneys' costs) as a lump sum in the form of a check jointly payable to petitioner and his counsel, Mr. Mark Sadaka, Esq., and a total of **$192.80** for petitioner's costs as a lump sum in the form of a check payable to petitioner.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[7]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.